FILED ___ LODGED
___ RECEIVED

DEC 19 2011

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

THE HONORABLE KAREN L. STROMBOM

11-CV-05302-RPLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY S ROBINSON, ) NO. C11-5302 RJB/KLS
        Petitioner, )
V. ) PETITIONER'S REPLY TO RESPONDENT
 ) SUPPLEMETAL ANSWER RE; CLAM 3&5
SCOTT FRAKES, )
        Respondent. ) NOTE ON MOTION CALENDER
 ) DECEMBER 23, 2011.

Petitioner replies to the answer filed with this Court by and through his attorneys, ROBERT M. MCKENNA, Attorney General, and JOHN J. SAMSON, Assistant Attorney General. Petitioner cites to numerous errors of fact and law in Respondent's answer.

**I...STATEMENT OF CASE**

On 10-18-11 this matter was re-referred to the honorable Magistrate Judge Karen L. Strombom for consideration of claims three and a portion of claim five on the merits, also for a recommendation on the issuance of a certificate of appeal ability and any other proceedings consistent with the opinion issued by United States District Judge Robert J. Bryan.

Accordeningly on 10-19-2011 the Magistrate Judge issued an order for the respondent to file and serve a brief on the petitioners 3rd claim and the portion of claim#5. On 11-30-2011 the respondent filed its brief. In response to the respondents brief I submit this reply.

PETITIONER'S REPLY TO RESPONDENT'S ANSWER          1

The issues before the respondent which they were ordered to brief on the merits was ground # 3 Robinson claims his 5th amendment right to due process as well as his 6th amendment right to confrontation as guaranteed by the U.S Constitution were violated when the trial court allowed the jury during its deliberation to review video evidence outside the presence of the defense and the governing of the trial Judge. United States V. Binder 769 F.2d 595 (1985). Also a portion of ground #5 Robinson's claim that his 6th amendment right to effective assistance of counsel was violated. Strickland V. Washington 466 U.S. 668,685 104 S.ct 2052.

**II.CLAIM #3** Focusing on claim #3 the respondent's argument fails first because the AG Misrepresent the claim. Their argument in objection to relief as well as the standard of review is predicated on a question that does not address the issue that is before this court.

On page 9 of the respondents brief they state; Robinsons challenge to the jury re-reviewing the video evidence during deliberation is not based on clearly established law and would require the application of a new rule. They go on to say that Robinson alleges the trial Judge committed Constitutional error by allowing the jury to review during deliberations a previously admitted video exhibit.

This is a clear mis-representation of my claim. I have never claimed that it was error for the trial judge to allow properly admitted video evidence. My claim rests solely on the manner that the review took place that was in an abridged fashion out side the governing of the trial judge and the presence of the defense.

The respondent fails to address the claim as it is presented. And while the respondent claims that they are unable to find any clearly established federal rule where the Supreme Court addresses the re-review of video evidence during deliberation. There are several

Cases where both the Supreme Court and the federal court have addressed the manner in which this review must take place in order insure a fair and impartial verdict.

In United States V. Binder 769 F.2d 595 (1985). This court in review took into account not only the question as to whether re-review of the video evidence was predjudicial, but more importantly the manner in which that re-review took place, and what precautions were taken by the court.

The respondent first relies on United States V. Muhlenbruch 634 F.3d 987,1001-1002 (8th cir 2011). But review of Muhlenbruch reveals that re-review took place in open court under the governing of the trial judge; the manner of replay is what the court considered in their ruling that the trial court did not violate his constitutional right. Next the respondent relies on United States V. Plato, 629 F.3d 646 652 (7th cir 2010) Review of this case also shows that the court focused on the manner of the re- replay, which took place in open court in the presence of the trial judge, the defense attorney and the prosecutor. Next the respondent relies on United States V. saunders, 553 F.3d 81,86-87 (1st cir 2009) review of this case shows that the re-review never took place therefore the manner of replay was never addressed by the court, how ever the ($1^{st}$cir ) state that in their review of the case though most cases in this particular area involve a jury request to re-review testimony transcripts or to have testimony read back, in their view the consideration involved in those situation and this case (video) are analogous. This statement by the Federal court is in contrast with the opinion of the Washington state court of appeals Div II in this case which said in their view video evidence is analogous to photos. Indeed there is no prior ruling in any court that support that video evidence is analogous to photographs or other documentary exhibits.

1 Even if this were true there was no reasonable justification for the court to allow the re-review of the video to take place in the manner that they did. Attached to this reply is again the portion of the trial transcripts were the trial judge allowed the prosecutor to remove from evidence the cd containing this video and others so that he could make still photos to provide the jury with during deliberation .the jury had still photos of this exhibit in the jury room during deliberation. (See Attachment (A) of this reply. Also as stated in my petition the trial judge in a prior ruling before deliberation addressed both the defense and the state as to the manner in which any replay would take place. Although he speaks of 911-taped evidence it was understood that this applied to all forms of re-replay of evidence if so requested by the jury. The judge clearly states that it would take place in open court (See Attachment (B) of this reply. Review of the record shows that the trial judge thought better then to allow re-review to take place out side his governing but allowed the state and defense counsel talk him out of it.

In this case none of the safeguards that both the Supreme Court and this court have previously required in the re-review of video evidence was taken. The trial judge had no control over the re-review, no cautionary instruction was given to the jury and no record of what took place during the re-review was made. There is no doubt that identification was the central issue in this case. The fact that during the first trial although in front of a different jury, re-review of the video evidence also took place except Judge Hickman, made sure that the re-replay took place in open court and ultimately this trial ended in a miss trial, and in the second trial again the jury asked to re-review the video evidence as well as at one point indicated that they to were deadlocked on 4 of the charges. This is a clear illustration that identification was the central issue and the difficulty the jury was having with the identification evidence

### III..TEAGUE DOCTRINE

I am not necessarily asking this court to apply a new rule, only to review this issue and its prejudicial impact the manner of re-review took place under the rules that are already in place.

The respondent attempts to raise a Teague doctrine now. Not only should this doctrine not apply it should not even be considered by this court at this point. The Teague doctrine has never been raised in this appeal prior to now, and as this court has previously ruled in Arredondo V. Ortiz 365 F.3d 778,781-782 (9th cir.2004) cert denied 543.U>S 892 (2004). Regarding when its obligation to perform a Teague analysis will be triggered, that while the court fully recognize their Teague obligation, when the state fails to raise Teague from the onset on appeal or fails to articulate the new rule of constitutional law or fails to state the reasons why such rule would not have been compelled by existing precedent, or fails to explain with particular reference to the appropriate universe of precedent, and fails to argue why the rule contended for is not within one of the Teague exceptions ,if none of this took place on appeal then no true Teague argument has been made and the court will decline to conduct a Teague analysis.

That's what took place in this case, this is the first time the mention of Teague has been made, Robinson would require the benefit of an evidentiary hearing in order to develop the facts to support his claim before this court regarding a Teague claim issue now raised.

Next the respondent claims that Robinson claim fails because the state court adjudication of his claim was reasonable (page 4-7. As previously stated my claim is that my constitutional right to due process and confrontation were violated based on the manner that re-review took place, this is how it was presented to the court of appeals. However the court addressed whether it was an abuse of discretion for the court to allow re-review. The respondent cannot

Claim that the state courts adjudication was reasonable when they failed to properly address the issue as it was presented to them.

## IV.... CLAIM #5

Finally regarding the portion of claim #5. Robinson's claim that defense counsel was ineffective. The respondent claims that the Supreme Court has not articulated specific guidelines for appropriate attorney conduct. But that's exactly what the court did in Strickland V.Washington 466 U>S>668,104 S.ct. 2052 (1984). It sets the standard for the professional norms. In this case review of the record shows that counsel spoke to Robinson about the problem with logistics at the first trial and asked his permission to allow her to be present in the event that any type of re-review of video evidence was requested as in the first trial Robinson agreed under the condition that she be present, as a lay person I did my best to articulate this to the court and this is what counsel said would take place. But she was not present, the re-review took place in a fashion that was very prejudicial to her client and she failed to object, not because it was tactical, or because it was in the best interest of her client or because it was a reasonable request, the record shows that her reason was because it was a hassle for her.

It was error for the court of appeals to determine that there was no prejudice or probability that any objection would have affected the Jury's verdict when the central issue in this case was identification.

## IIV... CONCLUSION

For the reasons stated above and in the petitioners previously filed petitions the petitioner respect fully request that this court grant the Habeas corpus petition.

Dated this 15th day of December 2011

*/s/ Gregory S Robinson*
Gregory s Robinson Pro-Se

#6    MCC / WSRU

# ATTACHMENT A

1    ~~want to remove the CD from evidence,~~ which is where it is
2    right now because of the first trial. I didn't want to
3    take that out without the Court's and defense counsel's
4    permission.
5         THE COURT: I would assume that you will
6    transfer the information, have defense counsel review it
7    and if you're in agreement, we'll go with that; if not,
8    I'll have to make a ruling.
9         MR. LANE: That's correct. I assume defense
10   counsel has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ with regard to
11   that?
12        MS. WHITENER: No.
13        MR. LANE: Additionally, there were compact disk
14   photos that we used during the course of the trial. And I
15   believe one of the concerns with the jury in the last
16   trial was they didn't have -- they felt that viewing it on
17   the screen, on the big screen -- we use this machine, I
18   don't know what it's called, it's like an Elmo, it's the
19   overhead projector and so the jurors didn't have hard
20   photographs of what we put up on the screen to view. So I
21   would ask for permission to place those photographs from
22   the CD onto photo paper. But, again, I would need the
23   Court's and defense counsel's permission to take those
24   CD's from evidence and to produce those hard copies.
25        THE COURT: Defense?

State v. Robinson - 9/11/06
Motions

1   MS. WHITENER: No objection, Your Honor. I just
2   ask for an opportunity to review the final product to make
3   sure it has not been enhanced in any way.
4   THE COURT: So what do you call it, a hard copy
5   or do you call it just the regular montage?
6   MR. LANE: It's not a photo montage. These are
7   surveillance photographs that are on computer. But
8   because it's on computer, they had to view it up on the
9   big screen and the big screen is sometimes hard to see.
10  Especially, if they have to view it during deliberations.
11  THE COURT: So it's going to be put into a
12  regular picture frame, paper.
13  MR. LANE: Correct.
14  THE COURT: That's the way you understand it,
15  counsel?
16  MS. WHITENER: Yes.
17  THE COURT: Okay. That's agreed.
18  MR. LANE: Finally, the defense has filed a
19  couple of witness lists. I should note for the record in
20  case the Court doesn't have it, I believe the wrong cause
21  number was placed on those witness lists. So I would ask
22  if the Court actually has the defense witness lists.
23  THE COURT: I do not have that. It might be in
24  the file. I have what says Defendant's Supplemental
25  Witness List. What about it, counsel?

State v. Robinson - 9/11/06
Motions

# ATTACHMENT B

1   instructions. You will have your notes and
2   everything else that goes with you. Do not
3   discuss the case with anyone outside this
4   courtroom. Okay. Leave your notes on the seats
5   and the instructions.
6               (Brief pause.)
7           THE COURT: Okay. Please leave your notes
8   and paperwork here. See you tomorrow morning at
9   8:45.
10          (The jury was excused for the day.)
11          (The following took place without the
12          presence and hearing of the jury:)
13          THE COURT: Both sides of the case
14  indicated several times to take the tape, the 911
15  tape, back into the jury room and listen to it as
16  many times as they want to. I don't normally do
17  that. I bring them out and let them listen to it
18  one time and take them back, if they want to
19  listen to it.
20          MR. LANE: I just suggested that they could
21  listen to it. I don't recall saying they could
22  listen to it as much as they wanted to.
23          THE COURT: I thought I heard that. If
24  they want to listen to it, I'll bring them back
25  out and play it out here, okay, when everybody is

1   present. Anything else?
2       MS. WHITENER: When you say when everyone
3   is present, do you mean Counsels and my client?
4       THE COURT: Yes.
5       MS. WHITENER: Okay. Because I believe the
6   State had the 911 disk put on our -- you know, cut
7   specifically; so that way, they can listen to it
8   and deliberate without us being involved like the
9   last time, so it's admitted into evidence; and if
10  the Court allows, they can come into here without
11  us being present because then what happens is if
12  they want to stop and listen to it, we would have
13  to leave the room and come back in; and he's in
14  custody.
15      THE COURT: What's your experience with
16  that, Counsel?
17      MR. LANE: I don't think there's any
18  problem, as long as -- I mean, I could certainly
19  show who the --
20      THE CLERK: Do we have a boom box, or does
21  it have to be done on -- oh, it's on CD?
22      MR. LANE: Yeah, it's on a disk.
23      THE CLERK: Okay.
24      MR. LANE: I can certainly -- what I'd be
25  happy to do is to -- if they want to listen to it,

```
 1        I'll come down and turn this machine on so that --
 2        and show Jups how to play it, and I would leave.
 3               THE CLERK:  Can we take that into the jury
 4        room?
 5               THE COURT:  Does the Defense feel that that
 6        would be proper, or would you rather be here?
 7               MS. WHITENER:  The only thing, Your Honor,
 8        is if the State is going to be here handling any
 9        exhibits, I would be required to be here.  My
10        client doesn't have to be here.  He's giving me
11        the okay to be here.
12               THE COURT:  If you're going to be here,
13        then your client will also be here.
14               MS. WHITENER:  (Nods head.)
15               MR. LANE:  Okay.
16               THE COURT:  So that's what's going to
17        happen.  If they want to listen to the tape,
18        everybody's going to be here.
19               MS. WHITENER:  Okay.
20               THE COURT:  Anything else?
21               MS. WHITENER:  No, Your Honor.
22               MR. LANE:  No.  Thank you, Your Honor.
23               THE COURT:  Okay.
24               (Court was adjourned for the day.)
25        / / /
```

```
_____ FILED _____ LODGED
                _____ RECEIVED
         DEC 19 2011
    CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                              DEPUTY
```

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GREGORY S ROBINSON<br>　　　　　Petitioner,<br>v.<br>SCOTT FRAKES<br>　　　　　Respondent. | NO. C11-5302 RJB/KLS<br><br>AFFIDAVIT OF SERVICE<br>BY MAILING |

I, Gregory s Robinson, pro se, do hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

That on the 15day of Dec, 2011, I did process at the Washington State Reformatory, in accordance with institutional mail policy, postage prepaid, United States Mail addressed to the following:

Robert M. McKenna, Attorney General, and John J. Samson Assistant Attorney General

Attorney General of Washington corrections Division, P.O.BOX 40116 Olympia, WA 98504-0116.

One true copy of the following documents in the above referenced cause number.
REPLY TO RESPONDENTS SUPPLEMENTAL ANSWER

DATED this 15day of December, 2011 at Monroe Washington.

Respectfully Submitted,

*/s/ Gregory S. Robinson/*

AFFIDAVIT OF SERVICE BY MAILING - 1