UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GREGORY S. ROBINSON,

                Petitioner,

v.

SCOTT FRAKES,

                Respondent.

No. 11-5302 RJB/KLS

**REPORT AND RECOMMENDATION**
**Noted for: February 24, 2012**

Petitioner Gregory S. Robinson filed a habeas petition with eight claims. ECF No. 5. The Court previously denied and dismissed all of Mr. Robinson's claims except for Claim 3 and one portion of Claim 5. ECF Nos. 22 and 25. Respondent filed a supplemental answer concerning these claims. ECF No. 28. Mr. Robinson filed a reply. ECF No. 31.

## BACKGROUND

Gregory S. Robinson is in the custody of the Washington Department of Corrections pursuant to a 2006 jury conviction for first degree robbery, first degree burglary, second degree theft, second degree possession of stolen property, and unlawful imprisonment. ECF No. 19, Exh. 1. Mr. Robinson was sentenced to 171 months. *Id.*, Exh. 2.

**A. Factual Background**

The Court relies on the factual summary of the Washington Court of Appeals:

> Janice Copeland lived alone in an apartment in Sumner, Washington. At 4:00 am one morning, Copeland was sleeping when a knock at her front door woke her up. She looked out the window and saw Robinson outside. She recognized him as the maintenance man who had come to her apartment to fix the

REPORT AND RECOMMENDATION - 1

faucets in her bathtub a few weeks earlier. Robinson explained that he needed to come in because a leak in her apartment was flooding the apartment below.

When Copeland opened the door, Robinson grabbed her, got behind her, and held his hand over her mouth. He told Copeland that he would not rape her, but he wanted money for drugs. He took her into the bedroom, tied her up, and gagged her. He then took her personal and business debit cards, cell phone, and keys to her car, apartment, and post office box.

*A. Trial*

Despite Copeland's unequivocal identification of Robinson as her attacker at trial, identity was the major issue in the case. The jury in Robinson's first trial was unable to reach a verdict.

At the second trial, the State supported Copeland's testimony with additional circumstantial evidence. First, it offered video surveillance tapes from the automated teller machines (ATMs) where Copeland's debit cards were used to obtain $300 in cash after the robbery; one of the videos was detailed enough to show some facial features that the State argued resembled Robinson. Second, Verndeleao Banks, who lived at the Golden Lion Motel, testified that Robinson purchased cocaine from her with $300 cash on the day after the robbery. Robinson also gave her some credit cards in a woman's name to use when the cash ran out.

Third, the State sought to establish that Copeland's cell phone was used to call a man named Kirby Christopher after the robbery and that Robinson knew Christopher through mutual association with the Golden Lion Motel.[2] It offered Copeland's cell phone bill as an exhibit during Copeland's testimony to establish that the phone was used to call Christopher; Copeland identified the calls on the bill that she had not made, then read the phone numbers and times of those calls into the record. The State offered no testimony from the phone company establishing that the bill was a business record for purposes of the hearsay exception, and defense counsel did not object.

At the end of the second trial, the jury found Robinson guilty of unlawful imprisonment, first degree burglary, first degree robbery, second degree theft, second degree possession of stolen property, and harassment.

*B. Sentencing*

At sentencing, defense counsel agreed with the standard ranges calculated by the prosecutor for Robinson's sentences because they both agreed that his offender score was higher than the statutory maximum score of nine points. Robinson's relevant criminal history consisted of (1) a 1981 attempted burglary

REPORT AND RECOMMENDATION - 2

conviction from California, (2) a 1989 robbery conviction from California, (3) four 1989 rape convictions (rape, oral copulation by force, sodomy by force, and sexual penetration with a foreign object by force) that the State agreed to count as same criminal conduct, and (4) the five current felony convictions. Nowhere in the record did the State identify any comparable Washington crimes by which to classify the California crimes for offender score purposes. Both counsel agreed that Robinson's offender score for the violent offenses was twelve, consisting of two points for the 1981 attempted burglary, four points for the 1989 robbery and rape convictions, one point for having committed the current offenses while on community custody, and five points for the current offenses.

Robinson disagreed with this calculation, arguing that his offender score was only seven points. His attorney acknowledged Robinson's disagreement and argued his objections "on his behalf." Report of Proceedings (RP) at 836. She stated that Robinson was asking the court to conduct a "[c]omparability [t]est" with regard to his 1981 attempted burglary conviction in California, but that he still counted the 1989 convictions as four points. RP at 836. Neither Robinson nor his counsel compared the 1981 California burglary statute with any Washington crime because defense counsel could not find the California statute at issue. The State agreed, however, to exclude the 1981 conviction from Robinson's offender score, resulting in an offender score of ten (still above the statutory maximum).

During Robinson's allocution, he repeated that he was "asking the Court to do a Comparability Test on the out-of-state crimes," but then stated, "I am giving myself the high end for the points I committed in '89, which would be four points." RP at 845. Robinson also asked the court to treat all of his current convictions as the same criminal conduct.

The court ruled that it did not need to perform a comparability analysis, applied the maximum offender score for Robinson's robbery and burglary charges, and sentenced Robinson to the statutory maximum prison sentence on each charge, a total of 171 months.

[2] Christopher was not a witness at trial, but Banks testified that she knew him and he spent time at the Golden Lion Motel selling drugs. [Court's footnote].

ECF No. 19, Exh. 2 at 1-4. The factual summary of the Washington Court of Appeals is accorded a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1). *Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009).

REPORT AND RECOMMENDATION - 3

**B.  Procedural Background**

The procedural background is set forth in detail in this Court's Report and Recommendation of September 12, 2011 (ECF No. 22) and is not repeated here.

## ISSUES FOR FEDERAL REVIEW

**Claim 3**: Petitioner's 5th Amendment right to due process and 6th Amendment right to confrontation were violated when the trial court allowed the jury to review a surveillance video during deliberations.

**Claim 5:** Petitioner's counsel provided ineffective assistance of counsel by not objecting to the jury's re-reviewing of the surveillance video during deliberations.

ECF No. 5, at 9 and 17.

## EVIDENTIARY HEARING

A petitioner who fails to develop the factual basis of a claim in state court is not entitled to an evidentiary hearing unless the claim relies on:

> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;
> and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. . . .

28 U.S.C. § 2254(e)(2).

"[T]he statute applies only to prisoners who have 'failed to develop the factual basis of a claim in State court proceedings.'" *Williams v. Taylor*, 529 U.S. 420, 430 (2000). "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in

light of the information available at the time, to investigate and pursue claims in state court; it does not depend ... upon whether those efforts could have been successful." *Id*. at 435; *Baja v. Ducharme*, 187 F.3d 1075, 1078-79 (9th Cir. 1999).

Even if 28 U.S.C. § 2254(e)(2) does not bar an evidentiary hearing, the decision to hold a hearing is still committed to the Court's discretion. *Schriro v. Landrigan*, 127 S. Ct. 1933, 1939-41 (2007). A hearing is not required if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d). *Id*. at 1939-40. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Landrigan*, 127 S. Ct. at 1940. "Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id*. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, ---U.S.---, 131 S. Ct. 1388 (2011). The statute bars consideration of evidence presented for the first time in federal court. *Id*. The undersigned concludes that an evidentiary hearing is not appropriate in this case.

## STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Federal habeas corpus relief does not lie for mere errors of state law. *Estelle v. McGuire,* 502 U.S. 62, 112 S. Ct. 475, 116 L.Ed.2d 385 (1991); *Lewis v. Jeffers,* 497 U.S. 764, 110 S. Ct. 3092,

REPORT AND RECOMMENDATION - 5

111 L.Ed.2d 606 (1990); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S. Ct. 871, 79 L.Ed.2d 29 (1984).

A federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). State court decisions must be given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357 (2002).

A state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and "nevertheless arrives at a result different from that precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). However, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the

REPORT AND RECOMMENDATION - 6

petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

Both claims that remain for consideration relate to the submission of Trial Exhibit 5, a surveillance video tape that was admitted into evidence and shown to the jury during the course of trial. The video consisted of surveillance from the ATMs where Mr. Robinson used Ms. Copeland's debit cards to obtain cash. ECF No. 19, Exh. 2, p. 17. The jury asked to see one of the tapes during its deliberations. ECF No. 29, Exh. 33, p. 811. Defense counsel stated to the trial judge that she and Mr. Robinson agreed that the jury could view the videotape during their deliberations because the exhibit was like other admitted exhibits:

> We're okay with the State's suggestion. … Every exhibit they are allowed to touch, they can play, replay, listen to whatever portion they want, because that's what they are supposed to do during deliberations and we're fine with that.

ECF No. 29, Exh. 33, p. 812.

**A.    Claim 3 – Viewing Video During Deliberations**

Mr. Robinson argues that the trial court violated his due process and confrontation rights when it allowed the jury to view the surveillance video outside the presence of the trial judge and defense. ECF No. 5, pp. 34-37. He argues that the jury had already been given still photographs taken from the video and any re-review of the video should have taken place in open court in the same manner as the trial court had proposed handling the 911 tape. ECF No. 31, at pp. 4, 11-13.

Respondent contends that the Supreme Court has never held that a judge violates the Constitution by allowing the jury to re-review a previously admitted video exhibit and that Mr.

REPORT AND RECOMMENDATION - 7

Robinson seeks relief on a new rule that is not clearly established and is therefore, barred under both 28 U.S.C. § 2254(d) and *Teague v. Lane*, 489 U.S. 288 (1989).[1]

When Mr. Robinson raised this issue in state court, the Washington Court of Appeals analyzed the issue as an ineffective assistance of counsel claim and rejected it because Mr. Robinson was unable to show how allowing the jury to view the video had prejudiced him:

> Robinson's claim fails because he is unable to show how allowing the jury to view the video prejudiced him, i.e., showing a reasonable probability the verdict would have differed otherwise. *See Strickland,* 466 U.S. at 694. The video consisted of surveillance from the ATMs where Robinson used Copeland's debit cards to obtain cash. This evidence is distinguishable from the videotaped testimony at issue in *United States v. Binder,* 769 F.2d 595 (9th Cir. 1985); allowing *testimony* to be reread or replayed is disfavored when it unduly emphasizes that testimony. *See Binder,* 769 F.2d at 600-01. Here, the video is more analogous to photographs or other documentary exhibits, which juries are entitled to review at their leisure. Cf. CR 51(h)….

ECF No. 19, Exh. 2, p. 17.

Under the Sixth Amendment, a criminal defendant has the right to be tried by an impartial jury and to confront and cross-examine the witnesses who testify against him. *See Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). The defendant is also entitled to a jury that reaches a verdict on the basis of evidence produced at trial. *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Estrada v. Scribner*, 512, F.3d 1227, 1238 (9th Cir.2008); *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir.1986) ("Jurors have a duty to consider only the evidence which is presented to them in open court."). The introduction of

---

[1] Under *Teague*, a new rule may not be applied or announced in a habeas case unless the rule falls within one of two narrow exceptions. *Penry v. Lynaugh*, 492 U.S. 302, 313 (1989). A "new rule" is one that "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis in original); *see also Gilmore v. Taylor*, 508 U.S. 333, 340 (1993).

REPORT AND RECOMMENDATION - 8

prejudicial extraneous influences into the jury room constitutes misconduct which may result in the reversal of a conviction. *Parker v. Gladden*, 385 U.S. 363, 364–65, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966).

Mr. Robinson relies on *U.S. v. Binder,* 769 F.2d 595 (1985), *overruled in part on other grounds by United States v. Morales,* 108 F.3d 1031 (9th Cir. 1997). In *Binder*, the Ninth Circuit held that "[u]ndue emphasis of particular testimony should not be permitted after the jury has begun deliberations." *Id.* at 600. The court was concerned that the rereading or replaying of *testimony*, in addition to the delay involved, could place undue emphasis on testimony considered a second time at such a late stage of the trial. *Id.* (emphasis added). However, a trial court's decision to replay videotape testimony during jury deliberations will not be reversed absent an abuse of discretion. *Binder,* 769 F.2d at 600; *United States v. Sims,* 719 F.2d 375, 379 (11th Cir. 1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). There is also, no per se rule against replaying videotaped testimony. The decision to replay testimony is within the broad discretion of the trial judge to be exercised on a case-by-case basis. *Id.* at 600-01; *see United States v. King,* 552 F.2d 833, 850 (9th Cir. 1976) (discretion granted trial judge to reread testimony is large and determination of whether discretion is abused turns on circumstances of the individual case), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). *See also U.S. v. Sacco,* 869 F.2d 499, 501 (9th Cir. 1989).

Several federal courts have determined that the rules of evidence gives the trial judge broad discretion to determine whether a jury may re-review previously admitted evidence during its deliberations. *See, e.g., United States v. Muhlenbruch*, 634 F.3d 987, 1001-1002 (8th Cir. 2011) (trial court did not abuse its discretion by allowing jury to re-review videotape of defendant's confession during deliberations); *United States v. Plato,* 629 F.3d 646, 652 (7th Cir.

REPORT AND RECOMMENDATION - 9

2010) (allowing jury to re-review surveillance video during deliberations was a matter within trial court's discretion); *United States v. Saunders*, 553 F.3d 81, 86-87 (1st Cir. 2009) (whether jury may re-review properly admitted video evidence during deliberations lies within the discretion of the trial court).

This case does not involve the replaying or re-reviewing of video taped *testimony*. Here, the jury re-reviewed surveillance videos from the automated teller machines where Ms. Copeland's debit cards were used to obtain $300 in cash after the robbery; one of the videos was detailed enough to show some facial features that the State argued resembled Mr. Robinson. ECF No. 19, Exh. 2, p. 2. The jury had viewed the surveillance tapes during trial and, according to Mr. Robinson, had already been given photographic stills taken from the surveillance tape. Thus, as was noted by the Washington Court of Appeals, re-reviewing the surveillance tape was no different than viewing photographs or other types of documentary evidence that are routinely allowed in the jury room.

Accordingly, Mr. Robinson has not shown that the trial court abused its discretion or that the state court decisions are contrary to or an unreasonable application of clearly established federal law. Accordingly, the undersigned recommends that this claim be denied.

**B.   Claim 5 – Ineffective Assistance of Counsel**

Mr. Robinson argues that his trial counsel rendered ineffective assistance when she agreed to allow the jury to view the surveillance video during its deliberations. ECF No. 5 at 17, 42-43. He argues that any re-review of the video should have been handled in the same as the trial judge had proposed handling the 911 tape in that it should have been re-played in the courtroom in the presence of the trial judge and counsel. He maintains that the failure to do so was prejudicial to him because identification was the central issue in this case.

REPORT AND RECOMMENDATION - 10

The primary question when reviewing a claim of ineffective assistance of counsel under AEDPA is not whether counsel provided ineffective representation, or whether the state court erred in its analysis of the claim. *Schriro v. Landrigan*, 127 S. Ct. at 1939. The primary issue is whether the state court adjudication was unreasonable. *Landrigan*, 127 S. Ct. at 1939; *Bell v. Cone*, 535 U.S. at 699. The Court owes a great level of deference to the state court adjudication. *Yarborough*, 540 U.S. at 5-6. Because counsel has wide latitude in deciding how best to represent a client, review of counsel's representation is highly deferential. *Id*. Review is "doubly deferential when it is conducted through the lens of federal habeas." *Id*. at 6.

To show ineffective assistance of counsel, a petitioner must satisfy a two-part standard. First, the petitioner must show counsel's performance was so deficient that it "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 686. Second, the petitioner must show the deficient performance prejudiced the defense so "as to deprive the defendant of a fair trial, a trial whose result is unreasonable." *Id*. The petitioner must satisfy both prongs to prove his claim of ineffective assistance of counsel. *Id*. at 697.

Under the first prong, the petitioner must specifically show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689. Imposing a detailed set of rules "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*. The Supreme Court has not articulated specific guidelines for appropriate attorney conduct. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

REPORT AND RECOMMENDATION - 11

Consequently, the proper measure remains reasonableness under prevailing professional norms. *Id*.

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id*. Every effort must be made to "eliminate the distorting effects of hindsight," and to judge counsel's performance from counsel's perspective at the time of trial. *Id*. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id*. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The Court always applies this presumption of competence. *Id*. at 689.

Under the second prong, that the petitioner must prove prejudice from counsel's allegedly deficient representation. *Cullen v. Pinholster*, --- U.S. ---, 131 S. Ct. 1388, 1403 (2011). It is not enough that counsel's errors had "some conceivable effect on the outcome." *Strickland,* 466 U.S. at 693. Rather, the petitioner must show "that, but for counsel's unprofessional errors, the result would have been different." *Id*. at 694. The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403 (quoting *Harrington v. Richter,* --- U.S. ---, 131 S. Ct. 770, 791 (2011)).

As noted above, when the Washington Court of Appeals reviewed Mr. Robinson's claim relating to the surveillance video tape, it analyzed the claim as an ineffective assistance of counsel claim and rejected it:

> Robinson argues that defense counsel was ineffective for failing to object to sending a video exhibit into the jury room during its deliberations. Robinson's claim fails because he is unable to show how allowing the jury to view the video prejudiced him, *i.e.*, showing a reasonable probability the verdict would have differed otherwise. *See Strickland,* 466 U.S. at 694. The video consisted of surveillance from the ATMs where Robinson used Copeland's debit cards to obtain cash. This evidence is distinguishable from the videotaped testimony at issue in *United States v. Binder,* 769 F.2d 595 (9th Cir.1985); allowing *testimony* to be reread or replayed is disfavored when it unduly emphasizes that testimony. *See Binder,* 769 F.2d at 600-01. Here, the video is more analogous to photographs or other documentary exhibits, which juries are entitled to review at their leisure. *Cf*. CR 51(h). Defense counsel's acquiescence to allowing the jury to view the video in the jury room was not deficient performance.

Exhibit 2, at 17 (emphasis in original).

Defense counsel recognized that the surveillance tape was like every other admitted exhibit. She and Mr. Robinson agreed that the jury could view the surveillance tape during deliberations. ECF No. 29, Exh. 33, p. 812. As noted by the Washington Court of Appeals, allowing the jury to view the surveillance tape was not the same as allowing the jury to listen to *testimony* being re-read or replayed. Mr. Robinson argues that the jury's request to re-review the surveillance video was an indication that they were having difficulty with identification evidence. ECF No. 31, p. 4. Even if this is true, the jury could re-review the evidence. Whether this occurred in the jury room or in the courtroom was completely within the court's discretion. Mr. Robinson fails to show a reasonable probability that his counsel's failure to object to allowing the jury to re-review the surveillance video during their deliberations would have affected their verdict. Accordingly, the undersigned recommends that this claim be denied.

REPORT AND RECOMMENDATION - 13

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard and based on a thorough review of the record and analysis of the law in this case, this Court concludes that Mr. Robinson is not entitled to a certificate of appealability with respect to this petition.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Claims 3 and 5 of Mr. Robinson's habeas petition be **denied**. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 24, 2012**, as noted in the caption.

DATED this  2nd  day of February, 2012.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14